TIMOTHY W. ASHBY et al.

*v.*

AMOS K. ASHBY.

[Filed November 7th, 1901.]

1. Where one is guilty of a contempt of court by removing fixtures from a mill of which he is in possession, while under an injunction restraining such removal, and it appears that an order of restoration of the removed equipment would be an ineffectual remedy because the removed equipment has to some extent been injured, and in some instances destroyed, the party in contempt, in addition to a restoration, must meet any expenditure of money required to remedy the wrong done.

2. Where one commits a contempt of court by removing fixtures from a mill of which he is in possession, while under an injunction forbidding such removal, he will not only be compelled to restore the fixtures and make reparation for damage done to the injured party, but a punishment will be imposed because of the offence to the dignity of the court, and the punishment to be inflicted for the offence to its dignity will depend on the conduct of defendant in regard to the reparation for the injury.

On bill, &c.  On petition for attachment for contempt.

*Mr. Clarence T. Atkinson,* for the complainants.

*Mr. David J. Pancoast,* for the defendant.

Grey, V. C. (orally).

This is a proceeding by petition to punish the defendant, Amos K. Ashby, for an alleged contempt of the decree and injunction served upon him in this case. Not only the counsel but the parties are here in court, and an expression of the court's views in the presence of the parties may aid in the settlement of the matter. The previous course of procedure was that a bill of complaint was filed in this court alleging that Amos K. Ashby claimed ownership of the fixtures in the mill called the Delaware Avenue Mill, situated at Burlington, New Jersey, and that he gave out in speech and declared his purpose to remove those articles. The articles named were "three roller mills, one purifier, smut mill, separators, two buhr mills, flour packer, and all the belting and other fixtures in said mill." The bill also prays that he may be restrained from committing any waste upon the mill premises. The defendant, Amos K. Ashby, by answer, asserted his title to the disputed fixtures. There followed a very severe litigation resulting in an adjudication in favor of the complainant, restraining the defendant, Amos K. Ashby, from removing the named articles and the belting and other fixtures in the mill, and from committing any waste. That injunction was admittedly served upon him on the 8th day of August, 1900. The executors of Edward Ashby's will, who are named in the bill of complaint as having a power of sale, after the decree was made, sold the mill. The purchaser was David G. Ashby, a

brother of the defendant, Amos K. Ashby. The purchase was made about August 8th, 1900, and there was a delay of a week or two in delivering the deed. When David G. Ashby received it, possession was not delivered by Amos, and an action of eject-ment appears to have been brought against him, which has been adverted to here in the testimony, resulting in a judgment for the plaintiff, David G. Ashby, who was put in possession of the mill in February of the present year, 1901. He then found that the mill had been denuded of a very considerable part of its equipment. These facts are not denied by anybody. The peti-tion now in hearing was then filed by David G. Ashby, one of the parties in the original suit against Amos K. Ashby, asking that the latter be attached for contempt for removing the follow-ing-named parts of the equipment of the mill:

"Belting on roll No. 1070, main belt on engine, belt on flour packer, grain conveyer belt, belt running from main shaft in third story, belting on roll elevators, on grain elevators, on separators, a wheat heater, main grain elevators, set of big scales, which were set in floor; also small scales, flour packer tubes, 3 pulleys, also an awning attached to said premises."

The proof is substantially without dispute that all of the articles there named were in the mill, and remained in the mill up to the time of the purchase by David G. Ashby, the petitioner, in August after the service of the writ of injunction. The proof is also substantially without dispute that Amos K. Ashby had built a new mill foreseeing his removal from the old one, and that, after the judgment in ejectment against him, he had moved his business from the old mill to his new mill and took with him almost all the articles named in the petition. I am not prepared to say that the testimony satisfies me that this removal of the fixtures was intendedly in contempt of the court, in the sense that the defendant conceived a purpose to insult the court and carried it into action by open defiance of its decree, but the evidence does indicate that he contemned the court in this: Hav-ing full knowledge of its order that he should not remove the equipment of the mill, he disobeyed it. His motive is of minor significance. My impression from the evidence is that he re-moved the articles named in order that his successor, when he

got possession of the mill, might be put to serious inconvenience, annoyance and loss in running it, and thus be less likely to be a dangerous competitor with himself. This is indicated by the fact that he took from the mill almost everything which went to make it immediately usable. He did not take one or two articles of the equipment of the mill, about which there might be a doubt whether they were within the injunction, but he took the main belting which runs around the fly-wheel, without which no motion whatever could be communicated to any of the machinery; he put in its place an inferior article, and put the removed one to use in his new mill; he took the belt off the flour packer and also the belt running from the main shaft to the third story, the belt on the grain elevator and on the separator and on the roll elevator. The belting was expressly mentioned in the injunction served upon the defendant, and its removal was prohibited. That he took this belting is not only proven, but is not denied even by himself. The effect of its removal was for the time to dismantle the mill. The evidence also shows that he removed a wheat heater (one of the machines used for the purpose of preparing the wheat for grinding) out of its place. He swears that he left this on the premises, but he took it out of its place and disconnected it in disobedience of the injunction, whether he left it on the premises or not. The manner of the defendant on the witness-stand, and the testimony with relation to his conduct, leads me to doubt whether that machine is in the same condition in which it was at the time when the injunction was served. The proof is that he removed the main grain elevator from the position in which it was at the time the injunction was served, and changed it materially; whether he seriously injured it, I am unable to say from the testimony, because it was not sufficiently clear in detail. He removed the scales which were built into the floor, and quite recently, by his own postal card, has offered to restore them. He removed the smaller flour packing tubes, which I am entirely satisfied were part of the equipment of the flour packer, necessary to its use. He says he did not remove the large barrel packer tube. The evidence shows that the packer was equipped with several sizes of packing tubes, and that they are necessary

to enable it to pack not only barrels but bags in smaller quantities. He also removed an awning, and recognizing his wrongdoing in this, attempted to right this matter by lately putting up a new one, probably by the advice of counsel. The only articles named as removed in the petition as to which the evidence is insufficient to show removal are the small scales and the three pulleys.

The proof conclusively shows that the defendant is in contempt of the decree of this court, and for this he must answer.

A proceeding for contempt of this character has two phases, and the order of the court thereon must have two considerations, one of which is full redress to the party injured. He is entitled to full restoration, and if expenditure of money be required to procure that restoration, the party who did the wrong must meet it. Another aspect of the case is the assertion of the dignity of the court. This will be accomplished by imposing upon the defendant such proper punishment as will teach him that he is bound to recognize the law of the land in which he lives, upon which he depends for his own safety and for the protection of his property.

As to that branch of the case which looks to this remedy to restore the party injured to his former place, the testimony shows that the acts of the defendant have not only removed equipment of the mill against the prohibition of the injunction, but it appears quite plainly that in making the removals injury has been done to the things removed, belting has been cut and used elsewhere than in its proper place, machines and other equipment have been disconnected, disarranged and displaced, parts have been taken away and in some cases substitution has been attempted. An order for mere restoration of the removed equipment to the places it occupied at the time the writ was served would not be an effectual remedy, for the removed equipment has by the act of removal been injured and in some instances destroyed. Justice can only be done by ascertaining the extent of these injuries, for the petitioner's remedy must be had in this court on this proceeding or he is remediless. The wrongs were done while the defendant himself was in possession of the premises.

Ashby *v.* Ashby.

The evidence before me, while fully sufficient to show contemptuous conduct on the part of the defendant in breach of the duty imposed upon him by the injunction, does not afford the means of finally determining what recompense he shall make in the way of restoration or satisfaction for the injuries he has done to the mill. I will therefore refer the matter to a master to ascertain and report what portion, if any, of the physical injury done to the mill by the removals may be redressed by restoration of the things removed, and what satisfaction by way of money should be paid for the residue. I find, as a fact, that all the items named in the petition, except the small scales and the three pulleys, were removed by the defendant. The master will accept this as established. He may have before him the proofs here taken, and such further testimony as either party may offer, but solely upon the matter of restoration, so far as it may be practicable, and money compensation for the residue of physical injury done in breach of the injunction. He may apply, if necessary, for further instructions.

Upon the coming in of the master's report I will determine what shall be done because of the offence to the dignity of the court. What this shall be will depend very largely upon the conduct of the defendant in regard to the reparation of the injury which he has committed. If he earnestly tries to restore and make whole for the wrong he has done, the court will consider his penitence as an endeavor to return to right conduct. If, on the other hand, there is a manifestation of a contumacious determination to persist in his wrongdoing, the court, by imposing a proper punishment upon this defendant, will enforce respect for its decrees.